UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOAN BAYE                                    CIVIL ACTION

V.                                           NO. 17-4789

MIDLAND CREDIT                               SECTION "F"
MANAGEMENT, INC., ET AL


<u>ORDER AND REASONS</u>

Before the Court is the plaintiff's motion to reconsider the Court's Order and Reasons dated August 9, 2017, in which the Court granted defendants' motion to dismiss the plaintiff's complaint for failure to state a claim. For the following reasons, the motion is GRANTED in part (as to Counts III-VI) and DENIED in part (as to Counts I and II).

**Background**

Joan Baye had debt. And in 2009 and 2010 her creditors acknowledged, in what is called a charge-off date, that they likely would not be successful at collecting the debt, and would consider it a loss for the company. Within a few years, the statute of limitations to judicially enforce collection tolled. Accordingly, creditors who owned her debt could not sue Baye to collect the outstanding balances or report her to a credit bureau. Sometime after the debt became time-barred, Midland Funding, Inc. bought

the debt for pennies on the dollar.[1] It contracted with Midland Credit Management, Inc. (MCM) to collect it on Midland's behalf. Earlier this year, MCM mailed Baye three letters, on Midland's behalf, attempting to collect on the expired debt. In May 2017, Baye sued Midland and MCM, on behalf of herself and those similarly situated, claiming that the letters violated the Fair Debt Collection Practices Act (FDCPA).

According to the complaint, Baye had defunct accounts with three separate entities: she had a balance of $3,416.35 with Target National Bank, a balance of $1,234.94 with Citibank, and a balance of $4,017.49 with Chase Bank. All of these debts have been time-barred for years. On February 3, 2017, MCM sent Baye two letters; one regarding her Chase account and the other her Target account. MCM's letters provided information about the debt in the top right corner, including the original creditor, the current balance, the

---

[1] According to a 2013 Fair Trade Commission study, debt that was between six and fifteen years old were sold for, on average, 2.2 cents per dollar. Neil L. Sobol, Protecting Consumers from Zombie-Debt Collectors, 44 N.M. L. Rev. 327, 354 (2014). Purchasing debt is a growing industry; the amount of purchased debt increased twenty-fold, from $6 billion to over $110 billion, between 1993 and 2005. Id. at 335. Credit-card debt accounts for 90% of those purchases. Id. This growth follows a growth in credit debt. According to the Federal Reserve Bank of New York, Americans have $784 billion in credit card debt nationally, with 7.4% being "seriously delinquent," as of June 30, 2017. Press Release: Total Household Debt Increases Driven by Mortgage, Auto and Credit Card Debt, FED. RES. BANK N.Y. (Aug. 15. 2017), https://www.newyorkfed.org/newsevents/news/research/2017/rp170815.

current owner (Midland), and the "discount" it would offer her if she paid (40%). Then it says "Available Payment Options," and lists three options. The first offers 40% off the balance if she makes one payment, the second offers 20% off if paid over 6 months, and the third offers monthly payments as low as $50 per month. Below the options it states:

Benefits of Paying Your Debt
- Save $1,366.54 if you pay by 03-05-2017-
-Put this debt behind you –
-No more communication on this account –
-Peace of Mind –

The bottom of the letter, in small but readable font, states:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau.

Below the disclaimer is information on how to make the payment.

On March 15, 2017, MCM sent Baye a communication regarding all three accounts. It included a cover letter, stating that Baye qualified for a special discount because she had three accounts with MCM. It lists "benefits" for accepting one of the "offers," including "Savings based on all accounts with us" and "Peace of mind." The final sentence states, "Act now to maximize your savings and put these debts behind you." There is no mention on the cover letter that the debts are time-barred. Enclosed are three, 3-page letters regarding the Target Debt, Citi Debt, and Chase Debt. Each letter contains nearly identical language as the

ones sent in February, offering three options to "maximize your savings and put this debt behind you." They each state that the offer expires April 14, 2017, and the initial payments are due by then. They also contain the same disclosure below the signature line stating that MCM will not sue to collect the debt.

In her May 10, 2017 complaint, Baye alleged that MCM's letters, sent on Midland's behalf, violate the FDCPA. The FDCPA prevents debt collectors (which MCM and Midland both are) from harassing any debtor, misleading or deceiving the consumer, or using unfair or unconscionable means to collect any debt. Baye faults the defendants for failing to sufficiently disclose the time-barred nature of the debt. Further, Baye alleges that under Louisiana law, debtors can renounce prescription and revive their time-barred debt by entering a payment plan, so as to reset the clock on the statute of limitations and become obligated to pay their original balance in full. The letters, Baye complains, fail to notify the consumer of this risk.

Midland and MCM moved to dismiss her complaint for failure to state a claim on June 26, 2017. The defendants contended that debt collectors are permitted to seek voluntary payment, even if the debt is unenforceable, as long as they do not threaten litigation or make false statements as to the enforceability of the debt. Moreover, they assert that their disclosure adequately informs the consumer that they will not sue on the debt. Further, they contend

that they do not have an obligation to warn about the potential revival of a time-barred debt. Any warning would be unnecessary because under Louisiana law, a debtor cannot revive a time-barred debt by making partial payment on a prescribed debt.

On August 9, 2017, this Court issued an Order and Reasons granting the defendants' motion to dismiss, embracing their arguments and interpretation of the law. Order and Reasons dtd. 8/9/17. The plaintiff now moves the Court to reconsider its Order and Reasons, pursuant to Federal Rule of Civil Procedure Rule 59(e) and Rule 60(b).

## I.    Legal Standard: Reconsideration

Federal Rule of Civil Procedure 59(e) provides, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." "A Rule 59(e) motion to alter or amend a judgment 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" Merritt Hawkins & Assocs. v. Gresham, 861 F.3d 143, 157 (5th Cir. 2017) (quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)). It "calls into question the correctness of a judgement." In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). Accordingly, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be

used sparingly." <u>Templet v. HydroChem Inc.</u>, 367 F.3d 473, 479 (5th Cir. 2004).

The plaintiff's motion is appropriately considered under Rule 59(e). It was filed within 28 days after the entry of judgement, and seeks to correct errors of law. However, the Court is only considering this motion under Rule 59(e). Rule 60(b)(3) is appropriate when the opposing party unfairly obtained a judgment by misleading the Court. Although the defendants did not always accurately characterize the cases they were citing, the Court does not believe that they actively misled it, or that they are responsible for the Court's error. Accordingly, the Court will consider the motion according to the standards set forth by Rule 59(e).


II.  Legal Standard: Motion to Dismiss

Because the plaintiff is asking the Court to reconsider its grant of defendants' motion to dismiss under Rule 12(b)(6), reviewing the standard for a motion to dismiss is appropriate. In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." <u>See</u> <u>Thompson v. City of Waco, Texas</u>, 764 F.3d 500, 502 (5th Cir. 2014) (citing <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But in deciding whether dismissal is

warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## III. Issues Presented for Reconsideration

On August 9, 2017, the Court issued an Order and Reasons granting the defendants' motion to dismiss the plaintiff's claim. In her initial complaint, Baye argued generally that: (1) Midland and MCM's letters are misleading and unfair because they are designed to reduce the likelihood that the consumer will read the disclosure; (2) the disclosure misleads the consumer into believing that Midland is choosing not to sue, where it is actually prohibited from enforcing the debt; (3) the letters are deceptive and mislead the consumer as to the character of the debt because they do not disclose that by entering a payment plan, the consumer may revive the prescribed debt under Louisiana law; (4) the suggestion that making payments to Midland provides benefits like putting the debt behind you and "peace of mind" is deceptive because the consumer has no obligation to pay the debt and therefore will not benefit from it, and doing so could re-instate significant debt obligations; and (5) sending multiple communications about the same time-barred debt is harassment and an unconscionable collection practices.

Midland and MCM moved to dismiss her complaint for failure to state a claim on June 26, 2017. The defendants contended that debt collectors are permitted to seek voluntary payment, even if the debt is unenforceable, as long as they do not threaten litigation or make false statements as to the enforceability of the debt. Here, the letters fairly disclose to the consumer that they will not sue to collect, and uses language explicitly endorsed by the FTC. Further, they contended that even if the disclosure does not make it clear why it is not going to sue or report to credit bureaus, it does not matter under the FDCPA because simply stating that they will not litigate the claim is sufficient.

In response to Baye's allegation that failing to disclose the possibility of renunciation is deceptive, the defendants contended that courts have never required debt collectors to warn of a potential revival of a time-barred claim. Revival would be inappropriate in this circumstance because entering into a payment plan would not renounce prescription under Louisiana law. According to Midland and MCM, partial payments are not enough; a signed writing is necessary to revive a time-barred claim.[2] Finally, they argued that sending merely three communications

_____

[2] Defendants made this claim in their motion to dismiss and their reply to plaintiff's opposition to their motion to dismiss. However, in their response to plaintiff's motion to reconsider, defendants concede that a signed writing is not required to renounce prescription, but maintain that partial payments are not sufficient.

could not be considered harassment, or unconscionable, because debt collectors are permitted to contact debtors, and letters are the least invasive way to do so. Because under Louisiana law debtors maintain a "natural obligation" (like a moral obligation) to repay debt even after their enforceable obligation has expired, the defendant has the right to repayment of debt after the statute of limitations has run. Accordingly, soliciting voluntary payment of prescribed debt is permissible. The defendants contended that because the FDCPA permits, as a matter of law, all of the actions that the plaintiff complains of, Baye failed to state a claim upon which relief can be granted.

In its August 9, 2017 Order and Reasons, the Court addressed each claim Baye made, and many of the defendants' arguments. In Counts I and II of her complaint, the plaintiff alleged that the defendants' letters violated 15 U.S.C. § 1692d because they had the "natural consequence . . . to harass, oppress, or abuse" the plaintiff. The Court dismissed these claims, holding that a debt collector can contact a debtor multiple times in an attempt to collect a debt and that using letters is the least intrusive means to do that.

In Counts III and IV, the plaintiff alleged that MCM and Midland violated 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The plaintiff alleged

that the letters were misleading because the disclosure did not sufficiently notify the debtor that MCM and Midland are prohibited from enforcing the time-bared debt. The plaintiff also asserted that the letters are deceptive in that they invite partial payment, but do not disclose that engaging in a payment plan could revive the expired debt under Louisiana law. In its August 9, 2017 Order and Reasons, the Court rejected the plaintiff's arguments. It first faulted the plaintiff for failing to state a specific subsection of Section 1692e under which relief could be granted. Indicating that simply stating that the letters are misleading under Section 1692e generally is insufficient, the Court held that the plaintiff failed to make factual allegations that supported a finding under any of the specific subsections. Further, the Court held that the disclosure was sufficient to notify the plaintiff as to the legal status of the debt, persuaded by the fact that the Federal Trade Commission has approved the use of the exact same language. The Court also held that a debt collector is not, as a matter of law, required to warn of a potential revival of a time-barred claim. Moreover, Louisiana law does not allow debtors to revive time-barred debts by entering into a payment plan; without the possibility of revival, there is nothing for MCM and Midland to disclose.

In Counts V and VI, the plaintiff alleged that MCM and Midland violated 15 U.S.C. § 1692f, which prohibits "unfair and

unconscionable means to collect or attempt to collect any debt,"
for the same reasons that defendants' letters were misleading. The
Court held that to succeed on this claim, the plaintiff was
required to state a new basis that is separate from the other FDCPA
alleged violations. Further, because the plaintiff relied on the
same factual allegations as in counts III and IV, and the Court
held there that the defendants' alleged conduct does not violate
FDCPA as a matter of law, the plaintiff cannot prevail under
section 1692f for the same reasons.

In her motion for reconsideration, the plaintiff sets out
three main reasons the Court should reconsider its August 9, 2017
Order and Reasons. First, the plaintiff points to the precedential
effect of the United States Court of Appeals for the Fifth
Circuit's holding in Daugherty v. Convergent Outsourcing, Inc.,
836 F.3d 507 (5th Cir. 2016), that a debt collection letter that
invites partial payment on a time-barred debt without disclosing
the possibility of revival is sufficient to give rise to a
plausible FDCPA violation. Despite the plaintiff invoking this
case in her reply to the defendants' motion to dismiss her claim,
and the defendants' discussion of it in its reply brief, the Court
failed to consider or cite the case in its August 9, 2017 Order
and Reasons. The Court is persuaded that the Daugherty case is
controlling, and must be considered and applied to the plaintiff's
claims. Second, the plaintiff contends that the Court erred in

finding that the plaintiff was required to cite a subsection of Section 1692e to sustain a claim for relief. The language of the section makes it clear that citing a subsection is unnecessary; the provision provides a blanket prohibition on "false, deceptive, or misleading representation[s]" and the following subsections are simply examples. 15 U.S.C. § 1692e ("A debt collection may not sue any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section: . . . .")(emphasis added). Finally, the plaintiff contends that defendants made a material representation as to the possibility of revival under Louisiana law. As discussed, the Court will not consider the plaintiff's contentions that the defendants materially misled the Court. However, the Court agrees that it must revisit its analysis of renunciation (the term in Louisiana for reviving prescribed debt) under Louisiana law.

In revisiting the plaintiff's claims, at least in part, the Court considers anew whether the plaintiff's factual allegations as to Counts I-VI state a plausible claim in which relief can be granted. The parties main points of disagreement can be boiled down to whether it is plausible that: (1) the letter inviting partial payment on a time-barred debt could mislead consumers to believing that the debt is enforceable, despite the disclosure; (2) entering into a payment plan could renounce the prescription

13

on the debt, thus renewing payment obligations; and (3) whether sending three communications on time-barred debt could be interpreted as harassment or abuse.

IV.  Counts I and II: 15 U.S.C. § 1692d

In Counts I and II of her complaint, the plaintiff alleges that defendants violated 15 U.S.C. § 1692d when they sent her three letters about the same time-barred debt. Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The provision furnishes a nonexclusive list of prohibited practices, such as threatening violence, using obscene or profane language, or repeatedly calling with the intent to annoy or harass. 15 U.S.C. § 1692d(1),(2), and (4). In its August 9, 2017 Order and Reasons, the Court dismissed these claims, finding that sending three letters, without more, could not rise to the level of harassment prohibited under section 1692d. In her motion for reconsideration, the plaintiff did not defend or otherwise address her 1962d claim, and therefore it is unclear whether the plaintiff is seeking reconsideration for that claim. Insofar that the plaintiff is seeking reconsideration, the Court finds no error in its prior ruling.

Simply attempting to collect on a time-barred debt is not harassment or abuse. See Daugherty, 836 F.3d at 509 ("[I]t is not

automatically unlawful for a debt collector to seek payment of a time-barred debt . . . ."). While the Fifth Circuit Court of Appeals has not ruled on any claim seeking relief under section 1962d, the Court is unable to find a district court case in the Fifth Circuit providing support for plaintiff's claim. See Birdow v. Allen, No.A-13-CV-709-LY 2013 WL 4511639, at *3 (W.D. Tex. Aug. 23, 2013) (holding that plaintiff did not state a claim upon which relief can be granted when he alleged that defendant debt collector sent him two letters and that violated section 1692d); McGinnis v. Dodeka, No. 4:09CV334, 2010 WL 1856450, at *4 (E.D. Tex. May 7, 2010) (finding that the plaintiff's section 1962d claims should be dismissed because repeated demand letters do not raise to the level of harassment and abuse contemplated by the statute); Brooks v. Flagstar Bank, No. 11-67, 2011 WL 2710026, at *8 (E.D. La. July 12, 2011) (holding that the complaint did not allege sufficient facts to support a finding that the collection letters violated section 1962d when debt collectors are permitted to contact a debtor multiple times to collect a debt); but cf. Harding v. Regent, 347 F. Supp. 2d 334, 336-37 (N.D. Tex. 2004) (holding that dismissal of a 1692d claim is inappropriate when debt collectors contacted the debtor several times, by way of demand letters and phone calls, after the debtor brought the suit and was represented by counsel) (emphasis added). Although the statute does not limit the type of behavior prohibited, the examples listed, such as

15

threatening violence and obscene language, indicates that the level of harassment contemplated by the statute requires more than the mere sending of a few letters. McGinnis, 2010 WL 1856450, at *4. Further, demand letters do not violate section 1962d just because they are misleading and unfair, in violation of sections 1692e and 1692f. Id. Even viewed in the light most favorable to Baye, that defendants sent three letters to her household is legally insufficient to state a claim for relief under 15 U.S.C. § 1692d. Therefore, there is no relief available to the plaintiff under Rule 59(e) and the Court will not reconsider the motion to dismiss as to this Counts I and II.

V.    Counts III-VI: 15 U.S.C. §§ 1692e and 1692f

The plaintiff asks the Court to reconsider its ruling that she failed to sufficiently allege that the demand letters could mislead the consumer and were unfair or unconscionable under 16 U.S.C. §§ 1962e and 1962f. She contends that under the United States Court of Appeals for the Fifth Circuit's ruling in Daugherty v. Convergent Outsourcing, Inc., and a plain reading of section 1962e, she has alleged the misleading and deceptive nature of the "discount programs" in Counts III-VI of her complaint sufficient to state a plausible claim for relief under sections 1962e and 1962f. Midland and MCM urge the Court to deny the plaintiff's request for reconsideration pursuant to Rule 59(e) on the ground that she fails to identify any new fact or change in the law

warranting reconsideration. Rule 59(e) authorizes the Court to correct errors of law; a review of relevant authorities prompts the Court to reconsider its ruling with respect to the claims made under sections 1692e and 1692f.

15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation" made in connection to collecting a debt. Section 1692e furnishes a nonexclusive list of prohibited practices, such as falsely representing the character or legal status of the debt and threatening to take legal action that cannot be taken. 15 U.S.C. § 1692e(2)(A), (5).[3] Similarly, 15 U.S.C. § 1692f prohibits the use of "unfair or unconscionable means" in attempting to collect a debt. Section 1692f also furnishes a non-exhaustive list of prohibited practices. Because the lead Fifth Circuit case on this issue addresses these provisions together, this Court will do the same. See Daugherty v. Convergent Outsourcing, Inc., 836 F.3d 507 (5th Cir. 2016).

_____

[3] The Court's Order and Reasons suggested that the plaintiff is obligated to cite a subsection of 15 U.S.C. § 1692e to sustain a claim for relief. Order and Reasons, Doc. 25 at 9, 9/6/17. The language of the section makes it clear that citing a subsection is unnecessary; the provision provides a blanket prohibition on "false, deceptive, or misleading representation[s]" and the following subsections are simply examples. 15 U.S.C. § 1692e ("A debt collection may not sue any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section: . . . .")(emphasis added).

The FDCPA was "clearly intended [by Congress] to have a broad remedial scope." Id. at 511 (quoting Serna v. Law office of Jospeh Onwuteaka, P.C., 732 F.3d 440, 445 (5th Cir. 2013)). In determining whether collection letters violated 15 U.S.C. §§ 1692e and 1692f, the Fifth Circuit found that the FDCPA should "be construed broadly and in favor of the consumer." Id. To evaluate whether a collection letter was deceptive or unfair, "a court must view the letter from the perspective of an unsophisticated or least sophisticated consumer." Id. The court "assume[s] that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." Goswami v. America Collections Enterprise, Inc., 377 F.3d 488, 495 (5th Cir. 2004). However, the least sophisticated consumer is still not "tied to the 'very last rung on the [intelligence or] sophistication ladder.'" Id. (alteration in original) (quoting Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997)). Accordingly, "[t]his standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." Taylor, 103 F.3d at 1236.

Considering the protective nature of this standard, and the minimal requirement that the plaintiff allege a facially plausible claim, "dismissal is appropriate only when it is apparent from a

reading of the letter that not even a significant fraction of the population would be misled by it." Daugherty, 836 F.3d at 512 (quoting McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014)). A court's determination of "whether a collection letter is confusing is a question of fact." Id. (quoting McMahon, 744 F.3d at 1020); cf. Gonzalez v. Kay, 577 F.3d 600, 606-07 (5th Cir. 2009) (holding that some letters are "so deceptive and misleading as to violate the FDCPA as a matter of law," others are not deceptive as a matter of law, and many are somewhere in the middle, requiring further consideration by the district court beyond the initial motion to dismiss phase of the pleadings.)

The plaintiff argues, and the Court agrees, the the Court failed to consider the 2016 Fifth Circuit decision, Daugherty v. Convergent Outsourcing, Inc., and its precedential effect on this case in its Order and Reasons granting the defendants' motion to dismiss. The facts and procedural posture in Daugherty are strikingly similar to the case at hand, and provide helpful guidance in addressing the plaintiff's claims and the defendants' 12(b)(6) motion. In Daugherty, the court overturned the district court's grant of defendants' motion to dismiss, finding that the collection letters defendants sent could violate the FDCPA. Id. at 513-14. Specifically, it held that "a collection letter seeking payment on a time barred debt (without disclosing its unenforceability) but offering a 'settlement' and inviting partial

19

payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA." Id.

Daugherty, a credit card debtor, amassed $32,405 in outstanding credit debt. Id. at 509. Defendant LVNV, a debt collector, purchased the plaintiff's debt from the original creditor, and hired another debt collector, defendant Covergent Outsourcing, to collect the debt on LVNV's behalf. Id. The statute of limitations for collecting the plaintiff's debt expired. Id. In January 2014, Convergent Outsourcing sent the plaintiff a letter titled "Settlement Offer" that stated:

> This notice is being sent to you by a collection agency. The records of LVNV Funding LLC show that your account has a past due balance of $32,405.91.
> Our client has advised us that they are willing to settle your account for 10% of your total balance due to settle your past balance. The full settlement must be received in our office by an agreed upon date. If you are interested in taking advantage of this offer, call our office within 60 days of this letter. Your settlement amount would be $3,240.59 to clear this account in full.
> Even if you are unable to take advantage of this offer, please contact our office to see what terms can be worked out on your account. We are not required to make this offer to you in the future.
>
> Sincerely,
> Convergent Outsourcing, Inc.

Id. at 509-10. The letter than offered three payment "opportunities." The first offered a "Lump Sum Settlement Offer of 10%" where the consumer would pay $3,240.59, and her "account [would] now be satisfied in full." Complaint at Exhibit A, Daugherty v. Convergent Outsourcing, Inc., No. H-14-3306, 2015 WL

3823654 (S.D. Tex. June 18, 2015), rev'd 836 F.3d 507 (5th Cir. 2016). The second offered a "Settlement Offer of 25% & Pay Over 3 Months," where the consumer would make an initial payment of $2,700.49 towards the "settlement balance of $8,101.48," and pay the remaining balance over the three following months. Id. Finally, the third directed the plaintiff to pay the balance in full, but to do so over 12 months. Id.

The plaintiff filed suit against defendants, alleging that they violated 15 U.S.C. §§ 1692e and 1692f when they did not disclose that the debt is not judicially enforceable and that a partial payment would revive the entire debt. Daugherty, 836 F.3d at 510. Defendants moved to dismiss the plaintiff's suit for failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Id. The district court granted the motion, "hold[ing] that the FDCPA permits a debt collector to seek voluntary repayment of a time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts." Id.

In Daugherty, the court dedicates most of the opinion to reviewing how other circuit courts, specifically the Third, Sixth, Seventh, and Eighth Circuit Court of Appeals, have addressed this issue. The Third and Eighth Circuits have adopted the same approach as the district court, finding that soliciting voluntary payment on time-barred debt is permissible even if the letter does not

disclose that the debt is time-barred, as long as the letter does not threaten legal action. Id. at 513. The Fifth Circuit rejects this interpretation of the FDCPA, and explicitly adopts the interpretation of the Seventh Circuit in McMahon v. LVNV Funding, Inc.. Id. at 513 ("The Seventh Circuit, however, concluded that the FDCPA 'cannot bear the reading that' the [Third and Eighth Circuit] courts have given it . . . . We agree with the Seventh Circuit's interpretation of the FDCPA in McMahon, and with the Sixth Circuit's opinion in Buchanan insofar as it is consistent with McMahon."). Because the Fifth Circuit embraces the Seventh Circuit's holding in McMahon, the Court turns to that decision for greater clarity and detail of the Fifth Circuit's holding in Daugherty.

In general, "a debt collector violates the FDCPA when it 'uses language in its collection letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable.'" Id. at 512 (quoting McMahon v. LVNV Funding, Inc., 744 F.3d 1010, 1020 (7th Cir. 2014)). Stated more broadly, "[w]hen a [collection] letter creates confusion about a creditor's right to sue, that is illegal." Id. (quoting Buchanan v. Northland Group, Inc., 776 F.3d 393 (6th Cir. 2015)). If the letters could mislead an unsophisticated consumer about the character, amount, or legal status of their debt, the plaintiff's FDCPA claim survives a motion to dismiss. Id. at 509, 512 (citing McMahon, 744 F.3d at 1022)

("While it is not automatically unlawful for a debt collector to seek payment of a time-barred debt, a collection letter violates the FDCPA when its statements could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable, regardless of whether litigation is threatened.").[4]

The Fifth Circuit finds that failing to disclose that a debt cannot be enforced because it is outside the statute of limitations is a violation of the FDCPA. Id. at 512 (citing Buchanan, 776 F.3d at 399). The court reasons that if there is no disclosure, the least sophisticated consumer could be misled as to the legal status of their debt. Id. Moreover, the court in McMahon and the Fifth Circuit also interpret the FDCPA to prohibit disclosures that do

_____

[4] The defendants contend that the Fifth Circuit in Mahmoud v. De Moss Owners Ass'n, Inc. limited Daugherty's holding by suggesting that collection letters that solicit payment on time-barred debt without threatening legal action is permissible. 865 F.3d 322, 333 (5th Cir. 2017). But defendants use the court's statements out of context. To be sure, the Mahmoud court recognized that the Daugherty opinion differs from other circuit's interpretation, and expressed that it agreed with the general principles put forth by other circuits that the Daugherty court specifically rejected. Id. at 333 n.3. However, Mahmoud does not overrule Daugherty, nor does it interpret the FDCPA in a manner that is relevant to the set of facts before this Court. Mahmoud is factually distinct from Daugherty, as the Mahmoud court squarely addresses, and the limitations it places on Daugherty do not apply here. Mahmoud, 865 F.3d 322, 333 (finding that Daugherty is factually distinguishable because in this case (1) less than 25% of the debt is time barred, (2) the statute of limitations may not act as a bar to non-judicial foreclosure on real property (where in Daugherty, it was undisputed that the entire debt was time-barred) and (3) the consumers were not misled by the amount they owed or the consequences of non-payment).

23

not clearly indicate that the collector cannot sue. The court in McMahon explains, "[i]f a debt collector stated that it could sue on a timebarred debt but was promising to forebear, that statement would be a false representation about the legal status of the debt."[5] McMahon, 744 F.3d at 1021 (emphasis in original). The Fifth Circuit in Daugherty and the Seventh Circuit in McMahon thus assess the deceptive nature of a letter by evaluating the contents of the disclosure as a whole, as opposed to finding that a letter is per se not misleading simply because a letter includes a disclosure, which states litigation is not forthcoming. See Daugherty, 836 F.3d at 512-13; McMahon, 744 F.3d at 1021. This reflects both courts' recognition that the Federal Trade Commission has found that "most consumers do not understand their legal rights with respect to time-barred debt." Daugherty, 836 F.3d at 512 (quoting McMahon, 744 F.3d at 1021 (citing FED. TRADE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION 26–27 (2010))).

---

[5] The Seventh Circuit also differs from the Third, Sixth, and Eighth on this point. Those circuits find that disclosure language that states the debt collector will not sue, but stylizes it as a choice, is permissible because the debt collector did not actually threaten litigation. Daugherty, 836 F.3d at 513; see also McMahon, 744 F.3d at 1020-21. The Fifth Circuit embraces the Seventh Circuit's analysis, and rejects this distinction the other circuits offer, signaling that it agrees with a more consumer-focused interpretation of the FDCPA. Id.

The Fifth Circuit also held that offering to "settle" a time-barred debt can be misleading, particularly if the letters invite partial payment and do not disclose the possibility of reviving the debt. Id. at 513. An offer to "settle" is problematic because "an unsophisticated consumer [c]ould believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable." McMahon, 744 F.3d at 1020. Accordingly, a special offer is misleading and violates the FDCPA "[i]f unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all." Id. at 1022.

Further, because an unsophisticated consumer could accept one of the settlement offers, and unintentionally reset the limitations period, the "settlement offers 'only reinforce[e] the misleading impression that the debt [is] legally enforceable.'" Daugherty, 836 F.3d at 512 (quoting McMahon, 744 F.3d at 1021). The courts are concerned for the well-meaning consumer who believes that her partial payment only obligates herself to the amount of that payment, but actually "inadvertently dig[s] herself into an even deeper hole." Id. at 512-13 (quoting Buchanan, 776 F.3d at 399) (citing Debt Collection (Regulation F), 78 Fed. Reg. 67,876 (Nov. 12, 2013)). Accordingly, the Fifth Circuit held that inviting partial payment, without disclosing the possibility of reviving the time-barred claim, could violate the FDCPA. Id. at 513.

## A. Possibility of Revival

The parties disagree as to whether it is plausible that entering into one of Midland's proposed payment plans would revive Baye's time-barred debt under Louisiana law. Because the possibility of revival was an important part of the Daugherty court's holding, the Court must, for the first time, address whether renunciation is possible under these circumstances.[6] In its prior Order and Reasons, the Court found that a debtor can only renounce prescription with a signed writing. The plaintiff asserts in her motion for reconsideration that a payment plan is sufficient to renounce prescription. Upon reconsideration, the Court agrees.

In most states, making a partial payment on a time-barred debt will revive the debt, restarting the statute of limitations. See Debt Collection (Regulation F), 78 Fed. Reg. 67,848-01 (proposed Mar. 7, 2013); see also Richard A. Lord, Williston on Contracts § 8:31 (4th ed. 2017) ("It is unquestionably true that the promise to pay an existing debt sufficient to remove the bar of the statute of limitations need not be made expressly, and that any acknowledgment or admission which by its terms may fairly be understood as recognizing the existence of a current obligation

---

[6] The court in Daugherty did not address whether revival of prescribed debt was actually possible under the state laws where the letters were sent because that issue was not addressed in the pleadings. Id. at 513 n.5.

will suffice."). Louisiana law has a more stringent requirement; partial payments on a time-barred debt do not suffice as a renunciation of prescription.[7] <u>In re Robertson</u>, No. 11-10354, 2014 WL 6967935, at *2 (Bankr. M.D. La. Dec. 8, 2014)). However, the law is less clear as to whether entering a payment plan, like that offered by Midland in its collection letters to Baye, constitutes renunciation.

"Renunciation of prescription is a technical term designating the abandonment of rights derived from an accrual of prescription." La. Civ. Code art. 3449 (1984), comment c. If a creditor does not sue to enforce their right to collect on the debt within a certain period of time, the debtor can bar the creditor's suit. "Renunciation allows the debtor to renounce this right after the creditor's time period has run . . . and abandon rights that have accrued due to the creditor's inaction." Sally Brown Richardson, <u>Buried by the Sands of Time: The Problem with Peremption</u>, 70 La. L. Rev. 1179, 1189 (2010).

Renunciation can be express or tacit. La. Civ. Code art. 3450 (1984). However, if it is tacit, it must result "from circumstances that give rise to a presumption that the advantages of prescription have been abandoned." La. Civ. Code art. 3451 (1984). This means

---

[7] Renunciation is the civil law concept for reviving a time-barred debt. Prescription is the civil law concept for statute of limitations.

that it "must be 'clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run.'" <u>Lima v. Schmidt</u>, 595 So.2d 624, 631 (La. 1992)(quoting <u>Queen v. W. & W. Clarklift, Inc.</u>, 537 So.2d 1214, 1216 (La. App. 4th Cir. 1989). The Supreme Court of Louisiana has held that a debtor can "acknowledge his debt, and pay part of it, without renouncing the prescription acquired on it." <u>Succession of Slaughter</u>, 108 La. 492, 493 (La. 1902). Instead, "renunciation requires a new promise to pay the debt, as '[a] new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued.'" <u>Lima</u>, 595 So.2d 624, 631 (quoting <u>Bordelon's, Inc. v. Littell</u>, 490 So.2d 779, 781 (La. App. 3 Cir. 1986)). Because the promise must be "clear, direct, and absolute," it follows that for a debtor to make a promise that renounces prescription, she must be aware that the debt is prescribed. <u>Queen</u>, 537 So.2d at 1216; <u>see also</u> <u>Mikulecky v. Marriott Corp.</u>, 854 F.2d 115, 119 (5th Cir. 1988) (finding that a debtor's promise to pay a prescribed debt is sufficient to renounce his prescription defense as long as the debtor knows that prescription has accrued). Once a new obligation is created, "[t]he old debt is distinguished, but the natural obligation which remains supplies consideration for the new promise."[8] <u>Id.</u>

---

[8] When a party enters into a contract, they may have a civil obligation and a natural obligation. <u>See</u> Marjorie Nieset

Less clear under Louisiana law is whether a new promise to pay part of the debt is sufficient to establish renunciation, or if the promise must be to pay the debt in full. The Court has only identified one case that addresses this issue, and it only does in part. In Harmon v. Harmon, a Louisiana appeals court held that an oral promise to pay $50 per month on a time-barred debt until the debt was satisfied renounced prescription. 308 So. 2d 524, 526 (La. App. 3 Cir. 1975). There, the plaintiff loaned the defendant $2,300 in four installment between 1967 and 1968. Id. at 525. The debt prescribed in 1971. Id. In 1972, the plaintiff called the defendant and he agreed to pay the plaintiff $50 per month. Id. at 526. The plaintiff claimed that the defendant also promised to pay her until the balance was settled, but the defendant denied that any promise was made. Id. The court reasoned that if the

---

Neufeld, Prescription and Peremption-The 1982 Revision of the Louisiana Civil Code, 58 Tul. L. Rev. 593, 596 (1983). "A civil obligation is the legal right of enforcement of an obligation," which is then extinguished by prescription. Id. On the other hand, "[a] natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." La. Civ. Code art. 1760 (1984). A natural obligation cannot be enforced through judicial action, but it still has legal consequences; "any amounts paid by the obligor in satisfaction of this obligation may not be recovered as payment of a thing not due." Nuefeld, supra; La. Civ. Code art. 1761 (1984) ("[W]hatever has been freely performed in compliance with a natural obligation may not be reclaimed."). Not all circumstances give rise to natural obligations, but the Code provides that civil obligations extinguished by prescription do. La. Civ. Code art. 1760 (1984).

plaintiff's testimony is correct, the defendant made a new promise to pay the debt, and therefore renounced prescription. But if the defendant's testimony is correct, "no new promise to pay the entire debt was made." Id. The court accepted the plaintiff's testimony, and held that the defendant made "a promise to pay the whole debt." Id.

The court's analysis of why the phone call would not renounce the prescription if the defendant's testimony was accepted is most telling. Harmon could be interpreted to mean that the defendant's version of the phone call did not establish renunciation because he did not promise to pay *the whole debt*. But it could also be read to mean that the defendant's version did not renounce the prescription because he did not make a new promise at all. Although neither the parties', nor the Court's research at this time, resolves the dispute concerning whether a promise to partially pay prescribed debt would renounce the prescription defense, it appears plausible that a new promise to pay a significant portion of the debt could renounce prescription.

The plaintiff's allegation—that "[i]f [the] [p]laintiff enters into a payment plan for any of the [d]ebts, then such agreement would constitute a new, enforceable obligation under Louisiana law"—thus meet the plausibility test. By sending in money pursuant to one of the collection letters' "options," it is plausible given the state of the law that the plaintiff could be

making a new, express promise to pay back her time-barred debt. Beyond a promise, the plaintiff could have also entered into an enforceable contract to pay the entire amount stated in the option by making an initial payment.[9] See La. Civ. Code art. 1906 (1984) ("A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."); La. Civ. Code art. 1756 (1984) ("An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing."). For example, imagine that the plaintiff selected Option 2, where she would pay 80% of the balance through six payments over six months. Under Louisiana contract law, the payment plans constitute an offer (and are characterized as such in the letters).[10] By selecting that option, and mailing defendants the first of the six payments, the plaintiff's conduct could be construed as accepting the offer

---

[9] In the plaintiff's reply papers, she suggests that if she selected option 2, she would be liable for 80% of the debt, regardless of whether she renounced prescription, because she would have formed a contract (as just discussed). That argument would prompt the Court to consider whether it is possible that the defendants' communications could be misleading under the FDCPA even if Louisiana law does not allow for renunciation in these circumstances. Because this issue was not timely raised, and it is not necessary to the Court's findings here, the Court will reserve analysis of that argument until further stages of litigation, if necessary.

[10] Exhibit C of plaintiff's complaint states, "These *offers* may start as low as . . . ." (emphasis added).

through performance. La. Civ. Code art. 1939 (1984) ("When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance.") By confecting a contract, the plaintiff promises to pay back 80% of the balance.

The line between making partial payments, which cannot renounce prescription, and making a new promise to pay back time-barred debt, which can, is fuzzy when the only thing that makes entering the defendants' payment plan a promise is that the debtor is reacting to a request by the debt collectors to make partial payments. To better assess if conduct amounts to a new promise on a debt, a court would consider whether the debtor was aware that the debt was prescribed and chose to renounce it. Under these circumstances, a court could find that a debtor intended to renounce the debt; the letters all disclose that the debt is prescribed. Although they might have the effect of misleading some unsophisticated consumers, a court could still find that the debtor knew that the debt was prescribed, and by making a promise to pay back a large portion of the debt, is choosing to renounce their prescription defense.

Renunciation is difficult to establish under Louisiana law. And Louisiana law in no way suggests that a plaintiff always

revives her time-barred claims by opting into a payment plan, as it does in other states. But as the law is not clear and it is plausible that a Louisiana court could find that entering a payment plan renounces a debtor's defense of prescription, this Court reconsiders its prior holding and finds that the plaintiff states a claim upon which relief can be granted as to this issue.

## B. Adequate Disclosure of Prescription Period and "Settlement" Language

The Court turns to consider whether the plaintiff's claims as to the adequacy of the disclosure and the deceptive nature of the offered "discount programs" state a claim to relief that is plausible on its face. In its prior Order and Reasons, the Court held that the disclosure was sufficient to notify the plaintiff as to the legal status of the debt, and that debt collectors were permitted to solicit voluntary payment on time-barred debt. But in considering Fifth Circuit precedent and reviewing the language of the letters, the Court finds that reconsideration of its judgment is appropriate under Rule 59.

Unlike the defendants in <u>Daugherty</u> and <u>McMahon</u>, Midland and MCM included a disclosure stating that they would not sue on the time-barred debt. In fact, the FTC endorsed the same disclosure language in a 2012 Consent Decree. <u>See</u> <u>Asset Acceptance Consent Decree</u>, https://www.ftc.gov/sites/default/files/documents/cases/

2012/01/120131assetconsent.pdf, at *13 (Jan. 31, 2012). However, the FTC specified that the disclosure should be displayed "clearly and prominently," meaning:

> that information presented in writing shall be in a type size and location sufficient for an ordinary consumer to read and comprehend it, and shall be disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer. If the information is contained in a multi-page document, the disclosure shall appear on the first page.

Id. at *3-4. The disclosure in the letters sent to Baye, in small writing at the bottom of the page, was not clear or conspicuous.[11]

Even though the FTC has approved the language of the disclosure, it is plausible that an unsophisticated person would not understand it to mean that the debt is not judicially enforceable. The law has developed since the FTC entered into this consent decree over five years ago, and courts have provided more clarity as to what constitutes an informative and clear disclosure. Defendants contend that "[s]ince Midland's letters here did not threaten (or even imply) legal action . . . Daugherty does not apply." The Court disagrees. The Daugherty court makes clear that a communication is not immunized from attack simply because it does not threaten litigation on time-barred claims. Daugherty, 836 F.3d at 509 ("While it is not automatically unlawful for a debt

---

[11] Also, the disclosure does not appear on the first page of the March communication. However, it does appear on each letter enclosed within that communication.

collector to seek payment of a time-barred debt, a collection letter violates the FDCPA when its statements could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable, regardless of whether litigation is threatened."). Daugherty is controlling law on these issues, and provides ultimate guidance as to the adequacy of the disclosure, despite what the FTC has allowed under certain circumstances in years past.

The defendants further contend that the law does not distinguish between disclosures that indicate that the debt collectors are choosing not to sue, rather than are not legally allowed to. Again, the defendants misapprehend the case literature. The McMahon court, and by adoption the Daugherty court, disagree with defendants' interpretation. McMahon, 744 F.3d at 1021 ("If a debt collector stated that it could sue on a timebarred debt but was promising to forebear, that statement would be a false representation about the legal status of the debt.") (emphasis in original). The disclosures' language—"Due to the age of this debt, we will not sue you for it"—could reasonably be interpreted to mean that MCM and Midland are electing not to sue. Further, common sense might lead a consumer to believe that a collector would only try to collect on enforceable debt because an indebted consumer previously avoiding payment would likely not voluntarily choose to pay a time-barred debt. The disclosure is not so clear, especially

in context of the rest of the letter, that it would unequivocally notice the least sophisticated consumer that judicial enforcement of the debt is not possible. Although the defendants' letter is not as deceptive as the defendants in <u>Daugherty</u> or <u>McMahon</u>, the Court cannot find as a matter of law that the disclosure adequately informs the consumer of the legal status of her debt, rather than confusing and misleading them.

The letters' invitation to make partial payments could plausibly be construed as misleading, notwithstanding the absence of "settlement" language. Defendants correctly point out that in <u>Daugherty</u> and the cases it relies on, the courts were troubled by the letters' "settlement offer," believing that it could mislead the consumer to believing the debt was legally enforceable. The defendants' letters do not offer "settlement." But the <u>Daugherty</u> court was not exclusively concerned with the settlement offers, holding that "offering a 'settlement' and inviting partial payment without disclosing the possible pitfalls could constitute a violation of the FDCPA." <u>Daugherty</u>, 836 F.3d at 513 (emphasis added). Further, the concerns with the use of "settlement offer" are not exclusive to that word, but with the implication that by offering relief from debt for a negotiated price, an unsophisticated consumer could believe that the debt is still enforceable. Language such as "[a]ct now to maximize your savings" and "put this debt behind you" implies that there is an obligation

to pay. By offering a significant discount if the consumer makes a payment within a month, the letters imply that if the consumer does not make that payment, she will owe the entire amount, even though the debt is unenforceable. It is plausible that the special offer language could prompt an unsophisticated consumer to "believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or . . . that the debt is legally enforceable at all," in violation of the FDCPA. McMahon, 744 F.3d at 1020.

The discount program offer is especially problematic because the letters fail to disclose the possibility that entering into a payment plan could revive the prescribed claim under Louisiana law. In direct contrast with defendants' assertion that "[n]o case has determined that a debt collector must warn of a potential revival of a time-barred claim," the Daugherty court explicitly held that soliciting partial payment without warning of a potential revival of a prescribed debt could violate the FDCPA. Daugherty, 836 F.3d at 513. The Fifth Circuit is concerned, as is the Consumer Financial Protection Bureau, that debtors would inadvertently revive their time-barred debt because of the misleading nature of a letter silent to that risk.[12] The Court is not persuaded that

_____

[12] The Consumer Financial Protection Bureau is currently considering proposals in its FDCPA rulemaking that would prevent debt collectors from collecting on revived debts, in addition to requiring time-barred debt disclosure. Small Business Review

entering into a payment plan does not revive a time-barred debt in Louisiana as a matter of law; thus the Court finds that the plaintiff has stated a plausible claim insofar as she alleges that defendants' letters soliciting partial payment without disclosing the possibility of revival violate the FDCPA. Therefore, in order to correct an error of law, the Court finds that the plaintiff's motion to reconsider its Order and Reasons granting the defendants' motion to dismiss her claims pursuant to 15 U.S.C. §§ 1692e and 1692f must be granted.

Accordingly, the plaintiff's motion to reconsider is GRANTED as to Counts III-VI, and is DENIED as to Counts I and II. Because the Court finds that the plaintiff has stated a plausible Section 1962e and 1962f claim, the Court hereby rescinds its August 9, 2017 Order and Reasons. Further, the Court DENIES the defendants' motion to dismiss the plaintiff's complaint with regards to Counts III-VI, and grants the motion to dismiss with regards to Counts I and II.

New Orleans, Louisiana, October 31, 2017

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

Panel for Debt Collector and Debt Buying Rulemaking: Outline of Proposals Under Consideration and Alternatives Considered, CFBP 20 (July 28, 2016), http://files.consumerfinance.gov/f/documents/20160727_cfpb_ Outline_of_proposals.pdf.